902 F.2d 39
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 LOOMIS & FRANKLIN, INC., Petitioner-Appellant,
v.
UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE,
Respondent-Appellee.
 No. 89-35362.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 9, 1990.*
Decided May 14, 1990.
 Before FARRIS, PREGERSON and BOOCHEVER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Loomis & Franklin (USA), Inc., (Loomis) appeals the district court's denial of Loomis's motion for summary judgment and the district court's grant of the motion for summary judgment made by the United States Immigration and Naturalization Service (INS). The district court found that the INS did not abuse its discretion when it denied Loomis's petition, on behalf of Pang Fu Huang, for a sixth preference immigrant visa. For the reasons stated below, we affirm.
 
 I. BACKGROUND
 
 3
 Loomis is engaged in the import, export and distribution of fishing rods and related equipment manufactured principally by its parent corporation, Loomis & Franklin Corporation, a Taiwan corporation. Loomis has been doing business in Vancouver, Washington since 1984. Loomis directly employs three persons and in addition has a distribution network of independent sales representatives. Between May 1, 1987 and March 31, 1988 Loomis documented sales in excess of $3,790,000.
 
 
 4
 On February 17, 1988, Loomis submitted to the INS at its Northern Regional Service Center in Lincoln, Nebraska, a sixth preference immigrant visa petition on behalf of Pang Fu Huang, a Taiwanese citizen. Loomis's parent corporation has employed Huang since 1980. Since 1985, Huang has served as the parent corporation's general manager, supervising and directing the employment activities of more than 200 employees. Loomis wants to employ Huang in the United States as its chief executive officer.
 
 
 5
 Under the Immigration and Nationality Act, qualified immigrants may obtain preferential immigrant visas--"sixth preference visas"--based on their ability to perform particular jobs, "for which a shortage of employable and willing persons exists in the United States". 8 U.S.C.A. Sec. 1153(a)(6) (West Supp.1990); see also 20 C.F.R. Sec. 656.2(d)(1)(iii) (1989). Generally, aliens applying for a sixth preference visa must obtain a certification from the Secretary of Labor stating that there are not enough American workers to fill the offered position and that the alien's employment will not adversely affect the working conditions of American workers who are similarly employed. 8 U.S.C.A. 1182(a)(14) (West Supp.1990); see also 20 C.F.R. Sec. 656.2(e)(1) (1989). However, the Secretary of Labor has determined that certain occupations, which include managerial or executive positions, are entitled to "blanket" labor certifications. 20 C.F.R. Sec. 656.10, Schedule A, Group IV (1989). Aliens seeking a blanket labor certification under Schedule A, Group IV must satisfy the requirements of the Immigration and Nationality Act for an L-1 nonimmigrant (referred to as an "intracompany transferee") visa classification as a manager or executive. 20 C.F.R. Sec. 656.22(f) (1989). The requirements for obtaining L-1 nonimmigrant status include establishing (1) that the alien was a manager or executive for a foreign company for one year preceding the visa application, and (2) that the alien is being transferred to a subsidiary of that company in the United States where he or she will be employed in an executive or managerial capacity. 8 U.S.C.A. 1101(a)(15)(L) (West Supp.1990). The alien's proposed position in the United States must satisfy the INS's definition of managerial or executive capacity found at 8 C.F.R. 214.2(1)(1)(ii)(B) & (C) (1989).[1]
 
 
 6
 On March 10, 1988, the INS director at Lincoln denied Loomis's sixth preference visa petition on behalf of Huang. The director stated in her decision that in view of the fact that Loomis employed only three persons and that its payroll expenses only amounted to $18,956.00 from May, 1986 through November 1987, the INS was not persuaded that Huang's duties would primarily be those of an executive or manager. The director further stated that "it would appear that [Huang] is to be engaged primarily in the day-to-day operations of the business itself."
 
 
 7
 Loomis filed a Notice of Appeal and Motion for Reconsideration with the INS Commissioner, Administrative Appeals Unit (AAU). On July 13, 1988, the AAU dismissed Loomis's appeal. The AAU determined that Loomis could not argue that it was still in the "start-up" phase of its operation, and that Loomis had not significantly expanded its staff or work force since it began doing business in the United States. The AAU stated that Loomis had not provided sufficient evidence to show that Huang would perform primarily managerial or executive functions, "as distinguished from supervisory tasks, clerical activities, or ordinary labor directed to the operation of an import/export distribution firm."
 
 
 8
 Loomis then petitioned the United States District Court for the Western District of Washington for review of the INS decisions. On February 17, 1989, the district court entered an order denying Loomis's motion for summary judgment and granting the INS's motion for summary judgment. The district court found that the INS had not abused its discretion in denying Loomis's petition for a sixth preference immigrant visa on behalf of Huang.
 
 
 9
 Loomis filed a motion for reconsideration of the district court's decision on March 1, 1989. On April 13, 1989, the district court affirmed its previous order and denied Loomis's motion for reconsideration. On May 11, 1989, Loomis filed the instant appeal.
 
 II. STANDARD OF REVIEW
 
 10
 We review de novo a grant of summary judgment by a district court. Kruso v. International Telephone & Telegraph, 872 F.2d 1416, 1421 (9th Cir.1989).
 
 
 11
 We review an INS denial of a preferential visa petition for an abuse of discretion. An abuse of INS discretion may be found if there is no evidence to support the INS decision or if the INS based its decision on an improper understanding of the law. Kaliski v. District Director of Immigration and Naturalization Service, 620 F.2d 214, 216 n. 1 (9th Cir.1980) (citing Song Jook Suh v. Rosenberg, 437 F.2d 1098, 1102 (9th Cir.1971)).[2]
 
 
 12
 We review the evidence included in the administrative record to determine whether, as a matter of law, the evidence permitted the INS to make the decision it did. Occidental Engineering Co. v. Immigration and Naturalization Service, 753 F.2d 766, 769 (9th Cir.1985). Although our review of the evidence is to be "searching and careful," we are "not empowered to substitute [our] judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).
 
 III. BURDEN OF PROOF
 
 13
 An alien who makes an application for a visa or any other document required for entry bears the burden of proof to establish that he or she is eligible to receive such visa or such document, and that he or she is entitled to the immigrant status claimed. 8 U.S.C.A. Sec. 1361 (West Supp.1990). Loomis, therefore, bears the burden of proving that Huang will be employed in an executive capacity as defined by the INS regulations.
 
 IV. INS DID NOT ABUSE ITS DISCRETION
 
 14
 The evidence submitted by Loomis includes the following: Loomis's parent corporation's resolution designating Huang as chief executive officer of Loomis; an affidavit from the president of Loomis's parent corporation describing Huang's position and projecting Loomis's future gross sales; leases for property occupied in the United States; various documents that describe Loomis's sales income and expenses; and several affidavits from companies acquainted with Loomis and Huang in support of the visa petition.
 
 
 15
 Our review of this evidence does not convince us that the INS abused its discretion when it determined that Loomis had not satisfied the burden of proving that Huang would primarily be engaged in managerial or executive activities. As recognized by the district court, the affidavits relied on by Loomis chiefly contain conclusory statements regarding Huang's position with the parent corporation and general industry practice. The affidavit of the parent corporation's president does little more than reiterate the regulation language when it describes Huang's proposed functions.
 
 
 16
 Due to the lack of specific information, the INS did not abuse its discretion by examining Loomis's current operation and staff to determine whether Huang would primarily spend his time performing executive functions. The INS also did not abuse its discretion by declining to base its decision on future prospects for additional employees and gross receipts. Loomis cites unpersuasive authority for the proposition that the INS should consider what Huang's functions will be at the time a visa will probably become available in late 1990.
 
 
 17
 V. INS DECISION DID NOT CONTRADICT INTENT OF CONGRESS
 
 
 18
 Loomis argues that the INS decisions, by referring to the limited number of Loomis employees, contradicts Congress's intent behind Public Law No. 91-255, which created the L-1 nonimmigrant classification under the Immigration and Nationality Act. Pub.L. No. 91-255, Sec. 1(b), 84 Stat. 116 (1970). Loomis argues that Congress intended not to distinguish between large and small corporations when they defined the requirements for an L-1 nonimmigrant status. According to the legislative history of Public Law No. 91-255, Congress intended to facilitate intracompany transfers, which had been hampered by the previous immigrant application process. 1970 U.S.Code Cong. & Admin.News 2750, 2754. However, the legislative history also states that "[t]he class of persons eligible for such nonimmigrant visas is narrowly drawn and will be carefully regulated and monitored by the Immigration and Naturalization Service." Id.
 
 
 19
 As indicated by Loomis, the INS did not intend to discriminate against small corporations in its regulations relating to the L-1 classification: "It is clear that a large organization is not required for the manager or executive to qualify for 'L' classification." 52 Fed.Reg. 5738, 5739 (1987). However, this intent does not dictate that all small corporation "chief executive officers" will qualify for blanket labor certifications. The INS's intent not to discriminate against small corporations suggests that the INS will not automatically deny a corporation's visa application based on the number of persons it employs. Small corporation managers and executives, however, must still satisfy the definitions in the INS regulations that are quoted at note 1 supra. Based on the evidence presented to it, the INS did not abuse its discretion by considering the size of Loomis's staff to determine whether Huang's duties would primarily be of an executive nature.
 
 
 20
 The district court is AFFIRMED.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The INS definitions state as follows:
 (B) "Managerial capacity" means an assignment within an organization in which the employee primarily directs the organization or a department or subdivision of the organization, supervises and controls the work of other supervisory, professional, or managerial employees, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization), and exercises discretionary authority over day-to-day operations. The term manager does not include a first-line supervisor, unless the employees supervised are professional, nor does it include an employee who primarily performs the tasks necessary to produce the product and/or to provide the service(s) of the organization....
 (C) "Executive capacity" means an assignment within an organization in which the employee primarily directs the management of an organization or a major component or function of that organization, establishes the goals and policies of the organization, component or function, exercises wide latitude in discretionary decision-making, and receives only general supervision from higher level executives, the board of directors, or stockholders of the business. This definition does not include an employee who primarily performs the tasks necessary to produce the product and/or to provide the service(s) of the organization.
 
 
 [8]
 C.F.R. Sec. 214.2(1)(1)(ii)
 
 
 [2]
 Loomis argues that, to be upheld, the INS decision must also be found to be based on substantial evidence. However, "review under the substantial-evidence test" of the Administrative Procedure Act Sec. 706(2)(E), 5 U.S.C.A. Sec. 706(2)(E) (West 1977), "is authorized only when the agency action is taken pursuant to a rulemaking provision of the Administrative Procedure Act itself," 5 U.S.C.A. Sec. 553 (West 1977), "or when the agency action is based on a public adjudicatory hearing," 5 U.S.C.A. Sec. 554 (West Supp.1990). Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 414 (1971) (citing 5 U.S.C. Secs. 556, 557). The INS decision in this case was not based either on a rulemaking procedure or on a public adjudicatory hearing. In addition, the substantial evidence standard found at 8 U.S.C.A. Sec. 1105a(a)(4) (West Supp.1990) (upon which Loomis's substantial evidence authority is based) applies only to final orders of deportation made against aliens within the United States. Our review, therefore, is limited to determining whether or not the INS abused its discretion